UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RONNIE LeSHAWN HILL, JR.,

    Plaintiff,

    v.                        CAUSE NO. 3:22-CV-226-RLM-MGG

WILLIAM R. HYATTE, et al.,

    Defendants.

OPINION AND ORDER

Ronnie LeShawn Hill, Jr., a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. The court must screen the complaint to determine whether it states a claim for relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Mr. Hill is proceeding without counsel, the court must give his allegations liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. Hill arrived at Miami Correctional Facility in December 2019. He says he's a member of the Gangster Disciples street gang. The narrative section of his complaint is hard to follow in parts, but he describes incidents in which other inmates allegedly hurt him. He claims that in January 2020, an inmate who was extorting

him for his commissary items stabbed him. He claims that in December 2020, another inmate severely beat him "for being bisexual and labeled weak." After this incident, he was moved to a different dormitory, where an inmate beat him as part of a dispute about a cell phone. Sometime later, another inmate discovered Mr. Hill had "snitched" on a fellow Gangster Disciple in a 2018 criminal case, and the inmate began extorting him.

In March 2021, he was moved to a cell with inmate Brian Taylor, who he claims was a member of the opposition gang the Vice Lords. He says he wasn't "flagged," by which he appears to mean that prison staff didn't recognize him as a member of the Gangster Disciples. During recreation period one morning two Gangster Disciple inmates came to the open door of his cell and told him to "step out it's about to get ugly," because they intended to attack inmate Taylor. Mr. Hill complied, and a knife fight ensued between Taylor and the other two inmates, with all three suffering injuries. Sergeant Breedon (first name unknown) commanded all the inmates in the area to immediately "lock down" in their cells. Mr. Hill refused because he thought inmate Taylor still had a weapon. He claims Sergeant Breedon drew his "bean bag gun" and pointed it "out the window" during this incident. Mr. Hill doesn't allege that the sergeant deployed the gun, nor does he clearly describe how this incident ended, other than to say that inmate Taylor was taken to the medical unit and "never came back."

Mr. Hill was moved to a new cell. He says the Gangster Disciples put a "green light" on him for not assisting his fellow gang members during the fight, apparently

2

meaning that the gang hierarchy issued an order for him to be beaten or injured. In early March 2022, Mr. Hill put in a grievance to Investigator McGee (first name unknown), a member of the prison's internal affairs staff, stating that he needed to talk to him about his safety concerns, but he claims Investigator McGee didn't respond. An attachment to the complaint reflects that Mr. Hill was told on March 3, 2022, that Investigator McGee "will be having one of his coordinators meet with you." After Mr. Hill filed his grievance, his counselor (who isn't named as a defendant) and Unit Team Manager Byrum (first name unknown) both gave him protective custody forms to complete. He claims he turned in the forms in early March 2022.

The complaint and attachments indicate that Mr. Hill is serving a lengthy term in the restrictive housing unit for a disciplinary infraction, although he doesn't describe the circumstances that led to his placement there. He expresses concerns about his safety if and when he were to return to general population. He wrote a "request for interview" to Unit Team Manager Byrum expressing his safety concerns and got this response: "You have [Disciplinary Segregation/Restrictive Housing Unit] time until 8-22-23. Prior to this date, we can get you to talk to [internal affairs] if you have specific details that can be proven and investigated." (ECF 2-1 at 2.) Mr. Hill doesn't think it is appropriate for prison staff to wait until closer to his release from restrictive housing to determine whether he should be placed in protective custody. He wants to know now where he will go after he is released from restrictive housing.

Based on these events, he sues Miami Warden William Hyatte, Unit Team Manager Byrum, Investigator McGee, Sergeant Breedon, and Indiana Department of

3

Correction Commissioner Robert E. Carter, Jr. He alleges in general terms that all of these individuals know of his safety concerns but have done nothing to protect him. He seeks monetary damages, placement in the protective custody unit, or a transfer to another facility.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008). A failure-to-protect claim can't be predicated "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). The plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard.

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

4

Klebanowski v. Sheahan, 540 F.3d 633, 639-640 (7th Cir. 2008) (internal citations and footnote omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. Hildreth v. Butler, 960 F.3d 420, 425–426 (7th Cir. 2020).

Mr. Hill allege a series of events in which other inmates injured him for a variety of reasons. But he doesn't provide factual content from which the court can plausibly infer that any of the defendants had advance notice of a substantial risk to Mr. Hill's safety from a particular inmate or inmates, and deliberately turned a blind eye to that risk. See Klebanowski v. Sheahan, 540 F.3d at 639-640. Rather, he describes attacks that occurred for random reasons, including a dispute over a cell phone and another inmate's dislike of his sexual orientation. In a similar case, an inmate suffered multiple attacks at the hands of other inmates, once for "taking too long to use the toilet," in another for snoring during the night, and in yet another because another inmate was angry about losing a card game. Grieveson v. Anderson, 538 F.3d at 776–777. The court of appeals observed that such random violence demonstrated "the tragic realities of jail and prison life that detainees are often subject to, absent fault on the part of individual jail [staff]." *Id.*

There is no indication the high-ranking officials named in the complaint had any personal involvement in these events, and they can't be held liable solely because they oversee operations at the prison. Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). As to Sergeant Breedon, Mr. Hill doesn't allege, and the court can't plausibly infer from what he does allege,

5

that the sergeant knew he was putting Mr. Hill at risk of harm by ordering him to return to his cell. Instead, it is evident from Mr. Hill's allegations that Sergeant Breedon was simply trying to restore order after a violent disturbance at the prison. Nor does Mr. Hill allege that he was injured as a result of Sergeant Breedon's directive: he says his cellmate was taken to the medical unit for treatment and never returned.

Unit Team Manager Byrum's only apparent involvement was to give Mr. Hill a protective custody form to fill out in response to his concerns. Nothing suggests that this individual was deliberately indifferent to Mr. Hill's safety. That Mr. Hill hasn't been placed in protective custody doesn't mean an Eighth Amendment violation occurred. Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997). It's evident from the complaint and attachments that prison staff haven't denied his request, but that they don't believe the issue to be pressing because he is serving a lengthy term in the restrictive housing unit. The court must afford substantial deference to prison officials on the day-to-day operation of the prison, particularly on matters related to safety and security. Bell v. Wolfish, 441 U.S. 520, 535 (1979). There is nothing unreasonable about waiting to make a final determination about Mr. Hill's need for protective custody until closer to the date he is scheduled to be released to general population. The inmates who are causing him problems might be transferred or released by August 2023. Mr. Hill would prefer to know where he is going after his release from the restrictive housing unit next year, but he doesn't express any

6

concerns about his safety today. Mr. Hill hasn't alleged a plausible claim against any defendant.

In the interest of justice, the court will allow Mr. Hill an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim against these defendants, consistent with the allegations he has already made under penalty of perjury. See Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018); Luevano v. Wal-Mart, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **May 2, 2022**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on April 4, 2022

                                              s/ Robert L. Miller, Jr.
                                              JUDGE
                                              UNITED STATES DISTRICT COURT